United States District Court
Eastern District of Michigan
Southern Division

United States of America,

v.

Jeffrey Baum,

        Defendant.

Hon. Judge Mark A. Goldsmith

Case No. 19-20836

/

**Plea Agreement**

The United States of America and the defendant, Jeffrey Baum, have reached a plea agreement under Federal Rule of Criminal Procedure 11. The plea agreement's terms are:

**1.**  **Count of Conviction**

The defendant will plead guilty to Count One of the indictment. Count One charges the defendant with conspiracy to commit briberyconcerning programs receiving federal funds under 18 U.S.C §§ 371 and 666(a).

**2.**  **Statutory Minimum and Maximum Penalties**

The defendant understands that the count to which he is pleading guilty carries the following minimum and maximum statutory penalties:

| Count 1 | Term of imprisonment: | 5 years |
| --- | --- | --- |
| | Fine: | $250,000 |
| | Term of supervised release: | Not more than 3 years |

**3.     Agreement to Dismiss Remaining Charges**

If the Court accepts this agreement and imposes sentence consistent with its terms, the United States Attorney's Office for the Eastern District of Michigan will move to dismiss any remaining charges in the indictment against the defendant in this case. Specifically, the United States Attorney's Office will move to dismiss the wire fraud charges in counts sixteen through thirty-three of the indictment.

**4.     Agreement Not to Bring Additional Charges**

If the Court accepts this agreement and imposes sentence consistent with its terms, the United States Attorney's Office for the Eastern District of Michigan will not bring additional money laundering charges against the defendant for the conduct reflected in the factual basis.

**5.     Elements of Count of Conviction**

The elements of Count One are:

   First:   Two or more persons conspired, or agreed, to commit the crime alleged, bribery concerning programs receiving federal funds.

   Second:  The defendant knowingly and voluntarily joined the conspiracy.

   Third: One or more overt acts were committed by a conspirator in furtherance of the illegal purpose.

Elements of Bribery Concerning Programs Receiving Federal Funds

First: Defendant and Richard Sollars were agents of the City of Taylor, a local government.

Second: The City of Taylor was a local government that received in any one-year period, benefits in excess of $10,000 under a federal program involving a grant, contract, subsidy, loan, guarantee, insurance or other form of federal assistance.

Third: The defendant and Richard Sollars corruptly accepted and agreed to accept cash and other things of value, with the intent to be influenced and rewarded in connection with any business transaction and/or series of transactions of the City of Taylor. The one-yearperiod of federal assistance was within twelve months before or after the commission of the offense.

Fourth: The business transaction and/or series of transactions involved anything of value of $5,000 or more.

**Factual Basis**

The parties agree that the following facts are true, accurately describe the defendant's role in the offense, and provide a sufficient factual basis for the defendant's guilty plea:

Between September 2017 and January 2019, in various ways, Defendant Jeffrey Baum, as City of Taylor Community Development Manager and Treasurer for the Committee to Elect Richard ("RICK") Sollars ("campaign fund"), did unlawfully, willfully and knowingly combine, conspire and confederate and agree with Richard Sollars, Mayor of the City of Taylor, Michigan, Shady Awad, a businessman who owned a property development company called Realty

Transition, LLC ("Realty Transition"), Hadir Altoon, owner of Dominick's Market in the City of Taylor and property development companies known as Abigail Development and Taylor South Investment, LLC, and others to corruptly solicit and demand for the benefit of any person and accept and agree to accept, thousands of dollars in cash payments for himself and over $40,000 in cash payments to Sollars, and other items of value, with the intent to influence and reward himself and Sollars in connection with a business, transaction, or series of transactions of the City of Taylor involving $5,000 or more.

**False Invoices for Catering Services to Sollars' Campaign Fund**

Between September 2017 and January 2019, defendant conspired with Sollars and Altoon to obtain by fraud monies from Sollars' campaign fund. Specifically, at Sollars' direction, defendant, as treasurer of the campaign fund, provided blank campaign checks bearing his signature to Sollars so that Altoon, with the assistance of defendant on occasions, could prepare false and inflated invoices for catering services that were either never rendered, were prepared in amounts higher than the actual amount for catering services provided, and/or were for catering services for which Altoon had already been paid by the City of Taylor. In furtherance of this fraudulent scheme, at Sollars' direction, Altoon issued the false invoices to Sollars' campaign fund and completed blank campaign fund checks provided by defendant in the amounts of the false invoices. Altoon cashed

the campaign checks based on the false invoices at Dominick's Market and gave Sollars cash and/or scratch-off lottery tickets in the same amounts of the checks in an amount totaling over $35,000, as set for the below.

| Date | Sollars' Campaign Check No. | Purported Purpose in Memo | Amount |
|---|---|---|---|
| 11/7/2017 | 1439 | Catering | $1,800 |
| 12/1/2017 | 1446 | Employee Holiday Party | $4,250 |
| 12/15/17 | 1451 | Employee Party Food | $4,250 |
| 12/15/17 | 1452 | Catering Superbowl City Hall | $5,600 |
| 2/12/18 | 1462 | S.O.C. 2018[1] | $4,274 |
| 6/29/18 | 1508 | TSF Sponsors | $3,750 |
| 10/17/18 | 1540 | Blank | $3,572.49 |
| 12/10/18 | 1557 | Holiday Party Emp | $4,250 |
| 1/3/2019 | 1558 | S.O.C. 2019 | $4,575 |
| | | | Total: $36, 321.49 |

**ROFR Property Transfers**

In furtherance of the conspiracy and in exchange for the cash and kickbacks provided to defendant and Sollars and facilitated on behalf of Awad, the following occurred:

On October 2, 2017, with the knowledge and approval of Sollars, defendant transferred two of Taylor's tax-foreclosed properties, 6255 Inkster Road and 23681 Baske, that the City had originally awarded to another developer, to Abigail Investments, a property development company owned by Altoon.

---

[1] S.O.C. is an abbreviation for State of the City for which Altoon never actually rendered any catering services during any year reflected in the chart above.

On July 19, 2018, without the knowledge of the Taylor City Council, but with the knowledge and approval of defendant and Sollars, defendant caused Altoon, as owner of TaylorSouth Investment, LLC, and Realty Transition, Shady Awad's property development company to enter into an "Assignment of Development Agreement" ("Agreement"). Under the terms of the Agreement, Realty Transition fraudulently agreed to transfer tax-foreclosed properties that the City of Taylor had originally awarded to Realty Transition to Taylor South Investment.

In July 2018, with the knowledge and approval of defendant and Sollars and pursuant to the Agreement, defendant provided Altoon a list of nine properties that were eventually transferred and/or were intended to be transferred to Taylor South Investment by Realty Transition that had been previously awarded to Realty Transition under Taylor's ROFR program. Altoon, in turn, gave defendant thousands of dollars in cash to reward defendant for helping him obtain the nine properties.

In furtherance of the fraudulent scheme, on August 27, 2017, December 5, 2018, and February 8, 2019, Shady Awad quit claim deeded to Altoon properties that the City of Taylor had originally transferred to Awad under the ROFR program.

In furtherance of the fraudulent scheme, on December 5, 2018, Shady Awad quit claim deeded to Altoon one property that the City of Taylor had originally

transferred to Awad under the ROFR program. In furtherance of the fraudulent scheme, on February 8, 2019, Shady Awad quit claim deeded to Altoon five properties that the City of Taylor had originally transferred to Awad under the ROFR program.

In furtherance of the conspiracy, in or about January 2019, defendant caused the City to dismiss approximately 21 tickets charging civil infractions, ranging between $150 and $200 each, that had been issued by the City against Realty Transition and Awad.

**Other Transactions for Benefit of Defendant and Sollars**

In November 2018, defendant accepted $5,000 in cash for the benefit of Sollars' campaign fundraising event.

In December 2018, defendant accepted $5,000 in cash for the benefit of Sollars' campaign fundraising event.

In or about December 2018, Altoon gave defendant hundreds of dollars in gift cards and $500 in cash.

**6.     Advice of Rights**

The defendant has read the indictment, has discussed thecharges and possible defenses with his attorney, and understands the crime charged. The defendant understands that, by pleading guilty, he is waiving many important rights, including the following:

    A.    The right to plead not guilty and to persist in that plea;

    B.    The right to a speedy and public trial by jury;

    C.    The right to be represented by counsel—and, if necessary, have the court appoint counsel—at trial;

    D.    The right to be presumed innocent and to require the government to prove the defendant guilty beyond a reasonable doubt at trial;

    E.    The right to confront and cross-examine adverse witnesses at trial;

    F.    The right to testify or not to testify at trial, whichever the defendant chooses;

    G.    If the defendant chooses not to testify at trial, the right to have the jury informed that it may not treat that choice as evidence of guilt;

    H.    The right to present evidence or not to present evidence at trial, whichever the defendant chooses; and

    I.    The right to compel the attendance of witnesses at trial.

**7.**   **Collateral Consequences of Conviction**

The defendant understands that his conviction here may carry additional consequences under federal or state law. The defendant understands that, if he is not a United States citizen, his conviction here may require him to be removed from the United States, denied citizenship, and denied admission to the United States in the future. The defendant further understands that the additional

consequences of his conviction here may include, but are not limited to, adverse effects on the defendant's immigration status, naturalized citizenship, right to vote, right to carry a firearm, right to serve on a jury, and ability to hold certain licenses or to be employed in certain fields. The defendant understands that no one, including the defendant's attorney or the Court, can predict to a certainty what the additional consequences of the defendant's conviction might be. The defendant nevertheless affirms that the defendant chooses to plead guilty regardless of any immigration or other consequences from his conviction.

**8.     Defendant's Guideline Range**

   **A.     Court's Determination**

   The Court will determine the defendant's guideline range at sentencing.

   **B.     Acceptance of Responsibility**

   The government recommends under Federal Rule of Criminal Procedure 11(c)(1)(C) that the defendant receive a two-level reduction for acceptance of responsibility under USSG § 3E1.1(a) for his guideline calculation on Count One. Further, if the defendant's offense level is 16 or greater and the defendant is awarded the two-level reduction under USSG § 3E1.1(a), the government recommends that the defendant receive an additional one-level reduction for acceptance of responsibility under USSG § 3E1.1(b). If, however, the government learns that the defendant has engaged in any conduct inconsistent with acceptance

of responsibility—including, but not limited to, making any false statement to, or withholding information from, his probation officer; obstructing justice in any way; denying his guilt on the offense to which he is pleading guilty; committing additional crimes after pleading guilty; or otherwise demonstrating a lack of acceptance of responsibility as defined in USSG § 3E1.1—the government will be released from its obligations under this paragraph, will be free to argue that the defendant not receive *any* reduction for acceptance of responsibility under USSG § 3E1.1, and will be free to argue that the defendant receive an enhancement for obstruction of justice under USSG § 3C1.1.

### C. Guideline Agreement

The parties also recommend under Federal Rule of Criminal Procedure 11(c)(1)(C) that the guideline range is **46-57** months and the following guideline provisions apply to the defendant's guideline calculation on Count One:

1. § 2C1.1(a)(1)-Defendant was a public official;

2. § 2C1.1(b)(1)-More than one bribe;

3. § 2C1.1(b)(2)-the value of the payments to public officials, defendant and Sollars, was more than $40,000 but less than $95,000; and

4. § 2C1.1(b)(3)-Offense involved an elected official.

### D. Factual Stipulations for Sentencing Purposes

The parties have no additional factual stipulations for sentencing purposes.

    **E.**    **Parties' Obligations**

Both the defendant and the government agree not to take any position or make any statement that is inconsistent with any of the guideline recommendations or factual stipulations in paragraph 8. Neither party is otherwise restricted in what it may argue or present to the Court as to the defendant's guideline calculation.

**9.**    **Imposition of Sentence**

    **A.**    **Court's Obligation**

The defendant understands that in determining his sentence, the Court must calculate the applicable guideline range at sentencing and must consider that range, any possible departures under the sentencing guidelines, and the sentencing factors listed in 18 U.S.C. § 3553(a).

    **B.**    **Imprisonment**

        **1.**    **Agreement**

Under Federal Rule of Criminal Procedure 11(c)(1)(C), the parties agree that the defendant's sentence of imprisonment on Count One not exceed the top of the defendant's guideline range as recommended by the parties.

        **2.**    **Each Party' Right to Withdraw from this Agreement**

The government may withdraw from this agreement if the Court finds the correct guideline range to be different than determined by Paragraph 8.C.

Defendant may withdraw from this agreement, and may withdraw from his guilty plea, if the Court decides to impose a sentence higher than the maximum

allowed by Paragraph 9.B.1. This is the only reason for which defendant may withdraw from this agreement. The Court shall advise defendant that if he does not withdraw his guilty plea under this circumstance, the Court may impose a sentence greater than the maximum allowed by Paragraph 9.B.1.

### C. Supervised Release

#### 1. Recommendation

The parties recommend that the Court impose a three-year term of supervised release.

#### 2. No Right to Withdraw

The parties' recommendation concerning supervised release is not binding on the Court. The defendant understands that he will have no right to withdraw from this agreement or withdraw his guilty plea if the Court decides not to follow the parties' recommendation. The defendant also understands that the government's recommendation concerning the length of the defendant's sentence of imprisonment, as described above in paragraph 9.B.1, will not apply to or limit any term of imprisonment that results from any later revocation of the defendant's supervised release.

### D. Fines

There is no recommendation or agreement as to a fine.

### E. Special Assessment

The defendant understands that he will be required to pay a special assessment of $100, due immediately upon sentencing.

## 10. Appeal Waiver

The defendant waives any right he may have to appeal his conviction on any grounds. If the defendant's sentence of imprisonment does not exceed 57 months the defendant also waives any right he may have to appeal his sentence on any grounds.

## 11. Collateral Review Waiver

The defendant retains the right to raise claims alleging ineffective assistance of counsel or prosecutorial misconduct, as long as the defendant properly raises those claims by collateral review under 28 U.S.C. § 2255. The defendant also retains the right to pursue any relief permitted under 18 U.S.C. § 3582(c), as long as the defendant properly files a motion under that section. The defendant, however, waives any other right he may have to challenge his conviction or sentence by collateral review, including, but not limited to, any right he may have to challenge his conviction or sentence on any grounds under 28 U.S.C. § 2255 (except for properly raised ineffective assistance of counsel or prosecutorial misconduct claims, as described above), 28 U.S.C. § 2241, or Federal Rule of CivilProcedure 59 or 60.

**12. Consequences of Withdrawal of Guilty Plea or Vacation of Judgment.**

If the defendant is allowed to withdraw his guilty plea, or if the defendant's conviction or sentence under this agreement is vacated, the government may reinstate any charges against the defendant that were dismissed as part of this agreement and may file additional charges against the defendant relating, directly or indirectly, to any of the conduct underlying the defendant's guilty plea or any relevant conduct. If the government reinstates any charges or files any additional charges as permitted by this paragraph, the defendant waives his right to challenge those charges on the ground that they were not filed in a timely manner, including any claim that they were filed after the limitations period expired.

**13. Use of Withdrawn Guilty Plea**

The defendant agrees that if he is permitted to withdraw his guilty plea for any reason, he waives all of his rights under Federal Rule of Evidence 410, and the government may use his guilty plea, any statement that the defendant made at his guilty plea hearing, and the factual basis set forth in this agreement, against the defendant in any proceeding.

**14. Parties to Plea Agreement**

This agreement does not bind any government agency except the United States Attorney's Office for the Eastern District of Michigan.

**15. Scope of Plea Agreement**

This plea agreement is the complete agreement between the parties and

supersedes any other promises, representations, understandings, or agreements between the parties concerning the subject matter of this agreement that were made at any time before the guilty plea is entered in court. Thus, no oral or written promises made by the government to the defendant or to the attorney for the defendant at any time before the defendant pleads guilty are binding except to the extent they have been explicitly incorporated into this plea agreement. If the parties have entered, or subsequently enter, into a written proffer or cooperation agreement, though, this plea agreement does not supersede or abrogate the terms of that agreement. This plea agreement also does not prevent any civil or administrative actions against the defendant, or any forfeiture claim against any property, by the United States or any other party.

**16. Acceptance of Agreement by Defendant**

This plea offer expires unless it has been received, fully signed, in the United States Attorney's Office by 5:00 p.m. on November 12, 2021.The

government may withdraw from this agreement at any time before the defendant pleads guilty.

                                                 Saima S. Mohsin
                                                 Acting United States Attorney

_____     _____
David A. Gardey                                   Dawn N. Ison
Chief, Public Corruption Unit            Assistant United States Attorney
Assistant United States Attorney

Dated: 10/27/2021

By signing below, the defendant and his attorney agree that the defendant has read or been read this entire document, has discussed it with his attorney, and has had a full and complete opportunity to confer with his attorney. The defendant further agrees that he understands this entire document, agrees to its terms, has had all of his questions answered by his attorney, and is satisfied with his attorney's advice and representation.

_____
Michael Rataj
Attorney for Defendant

_____
Jeffrey Baum
Defendant

Dated: 10-28-21